The Honorable Karen A. Overstreet
Chapter 13
Hearing Date: December 10, 2014
Hearing Time: 9:00 a.m.
Hearing Location: Marysville Municipal Court
1015 State Ave., Courtroom 1
Marysville, WA 98270

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| In re | BANKRUPTCY NO. 14-16771-KAO |
|---|---|
| JUSTIN SCOTT GUTHRIE, | **BOEING EMPLOYEES CREDIT UNION OBJECTION TO CONFIRMATION** |
| Debtor. | |

Boeing Employees Credit Union ("BECU") objects to confirmation of the debtor's plan, originally filed October 09, 2014 (ECF No. 16) as follows:

## I. INTRODUCTION

11 U.S.C. § 109 prohibits Chapter 13 relief unless debtor Justin Guthrie can prove that on the date of the filing of the petition, he had "noncontingent, liquidated, unsecured debts of less than $383,175." Guthrie is ineligible for Chapter 13 relief because he owes a deficiency balance on a boat loan after the boat was repossessed by BECU of $584,376.25. This amount is unsecured, noncontingent, and liquidated. Because it exceeds 11 U.S.C. § 109's limit, the plan should be dismissed.

## II. FACTS

**A.  Guthrie agreed to repay BECU $798,263.38 plus interest in monthly payments for the purchase of a luxury boat.**

On July 1, 2007, Guthrie entered into a loan agreement with BECU under account number xxxxxx7245 for the purchase of a 2006 48 foot Sea Ray Sundancer boat, HIN

BECU OBJECTION TO CONFIRMATION - 1      NEWMAN DU WORS LLP      1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

Case 14-16771-KAO    Doc 23    Filed 11/25/14    Ent. 11/25/14 16:36:35    Pg. 1 of 10

#SERP6832A606, with twin diesel engines. (November 25, 2014 Declaration of Keith Scully ("November 25, 2014 Scully Decl.") at Ex. A.) The parties executed two separate documents before BECU loaned Guthrie money to purchase a luxury boat. One document, the Promissory Note and Security Agreement ("Promissory Note"), provides the terms of the loan, and mandates that Guthrie must repay the entire balance and that BECU could accelerate payments and demand immediate payment in full if Guthrie defaulted. (November 25, 2014 Scully Decl. at Ex. B.) The Promissory Note provides that "[y]ou unconditionally promise to pay [] the above sum, plus interest on the unpaid balance at the above noted interest rate." *Id.* at p. 1. It provides that Guthrie is liable for the entire balance "notwithstanding any [] release of security." *Id.* at p. 2. The preferred marine mortgage secured BECU's interest in the vessel, but did not establish repayment terms. (November 25, 2014 Scully Decl. at Ex. B.)

Each month, Guthrie agreed to pay $6,546.51. (November 25, 2014 Scully Decl. at Ex. A.) He agreed to an interest rate of 7.740%. *Id.* The Promissory Note established that failure to pay was an event of default, and that BECU could immediately demand all amounts owed by Guthrie when an event of default occurred. *Id.*

**B.  Guthrie defaulted on the Promissory Note and BECU sold the collateral and credited the sale proceeds to the indebtedness.**

Guthrie stopped making payments, and BECU repossessed the boat on or about January 12, 2012 after sending Guthrie a notice of repossession. (November 25, 2014 Scully Decl. at Ex. A.) Guthrie assisted in the repossession by voluntarily delivering the boat to BECU's agent, Marine Lenders, and provided the necessary documentation to release his interest in the preferred marine mortgage. (November 25, 2014 Scully Decl. at Ex. A.) BECU used a third party, Marine Lenders, to list the boat for sale to the public. (November 25, 2014 Scully Decl. at Ex. B.)  Marine Lenders specializes in selling vessels, and advertises its inventory publicly. (November 25, 2014 Scully Decl. at Ex. B.) Marine Lenders accepted bids from the public and forwarded them to BECU for review. (November 25, 2014 Scully Decl. at Ex. B). BECU also used Brasher's NW Auto Auction

BECU OBJECTION TO CONFIRMATION - 2     **NEWMAN DU WORS LLP**     1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

Case 14-16771-KAO    Doc 23    Filed 11/25/14    Ent. 11/25/14 16:36:35    Pg. 2 of 10

to see if there was any interest in the boat at wholesale. (November 25, 2014 Scully Decl. at Ex. A.) There was no interest at $230,000. (*Id.*) BECU considered all offers, and eventually sold the boat for the highest offer, $350,000, to a third party. (November 25, 2014 Scully Decl. at Ex. B.) A public auction was not used because there is no appropriate vessel auction in this area other than Brasher's NW Auto Auction. (November 25, 2014 Scully Decl. at Ex. B.) After the sale, BECU sent a letter to Guthrie detailing the sale and reminding him that he was responsible for the deficiency balance. (November 25, 2014 Scully Decl. at Ex. B.)

BECU did not ever state to Guthrie that BECU would credit any amount other than the commercially reasonable sale value of the vessel to Guthrie's indebtedness, nor did the parties discuss modifying the Promissory Note or otherwise changing the total amount due. (November 25, 2014 Scully Decl. at Ex. B.) After Guthrie released his interest in the vessel, BECU filed a satisfaction of mortgage with the United States Coast Guard because the vessel no longer secured Guthrie's debt and the mortgage was accordingly moot. (*Id.*)

## C. BECU accurately accounted for each payment Guthrie made and provided Guthrie with the accounting.

BECU kept accurate records of each payment made by Guthrie and the sale proceeds of the vessel. (November 25, 2014 Scully Decl. at Ex. B.) BECU provided Guthrie with a copy of BECU's records when Guthrie requested it. (November 25, 2014 Scully Decl. at ¶ 5.) After all appropriate credits and offsets Guthrie owes BECU the principal amount of $503,872.29 plus interest at the rate of 7.74% through July 10, 2014 in the amount of $68,127.14. (November 25, 2014 Scully Decl. at Ex. A.)

The promissory note also provides for reasonable attorney's fees and costs. (November 25, 2014 Scully Decl. at Ex. A.) BECU has expended $6,151.50 in pre-filing attorney's fees and costs to date. (*Id;* (November 25, 2014 Scully Decl. at Ex. C.) Each of those expenses was necessary and reasonable. (November 25, 2014 Scully Decl. at ¶ 6, Ex. C.)

BECU OBJECTION TO CONFIRMATION - 3      **NEWMAN DU WORS LLP**      1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

Case 14-16771-KAO    Doc 23    Filed 11/25/14    Ent. 11/25/14 16:36:35    Pg. 3 of 10

### D. BECU moved for summary judgment and Guthrie filed for Chapter 13 protection.

On August 15, 2014, BECU moved for summary judgment in Snohomish County Superior Court. (November 25, 2014 Scully Decl. at ¶ 7.) On September 4, 2014, Guthrie opposed BECU's motion, and on September 11, 2014, BECU replied. *Id.* Before the matter could be heard by the Superior Court, Guthrie filed for bankruptcy. Guthrie did not disclose the amount of his debt to BECU to this Court.

## III. AUTHORITY

### A. Guthrie's plan may not be confirmed if Guthrie owes more than $383,175 in unsecured debt.

Chapter 13 is limited to "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175" 11 U.S.C. § 109(e). A debt is "noncontingent" if all the events giving rise to liability have occurred prior to the filing of the bankruptcy petition. *See, e.g., In re Mazzeo*, 131 F.3d 295, 303 (2d Cir.1997); *In re Knight*, 55 F.3d 231, 236 (7th Cir.1995). A debt is "liquidated" if its amount is certain due to agreement of the parties or by operation of law. *United States v. Verdunn*, 89 F.3d 799, 802 (11th Cir.1996). A dispute over the debtor's liability does not make a debt contingent or unliquidated. *see In re Mazzeo, supra*, and *Verdunn*, supra. If Guthrie disputes BECU's claim, the Court must determine the amount of unsecured debt. *In re Sylvester*, 19 B.R. 671 (B.A.P. 9th Cir. 1982).

### B. Guthrie owes BECU $584,376.25 in noncontingent, liquidated, unsecured debt and is therefore ineligible for Chapter 13.

As of the date of filing his petition, Guthrie owed $578,464.75 plus $6,151.50 in costs and attorney's fees. (November 25, 2014 Scully Decl. at Ex. A.) The amount owed is unsecured because it is the deficiency between the sale of the boat and the amount of the promissory note. It is noncontingent because all of the events giving rise to liability occurred before Guthrie filed for Chapter 13 protection: he signed the promissory note in 2007 and BECU repossessed and sold the collateral in 2012. (November 25, 2014 Scully Decl. at Ex. B.) It is liquidated because the amount can be determined by operation of law:

BECU OBJECTION TO CONFIRMATION - 4    **NEWMAN DU WORS LLP**    1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

Case 14-16771-KAO    Doc 23    Filed 11/25/14    Ent. 11/25/14 16:36:35    Pg. 4 of 10

the Promissory Note establishes the principal amount and requires payment of interest and costs of collection. Ordinary principles of contract law thus determine the amount due.

**C.	Guthrie's claim that the amount is uncertain fails.**

Guthrie opposed BECU's motion for summary judgment in State court by raising a range of mistaken legal theories. Because there is no opportunity for BECU to respond to Guthrie's reply in support of confirmation, and BECU does not know which if any of these defenses Guthrie may raise, BECU responds to each defense here.

**1.	The preferred marine mortgage does not prevent BECU from collecting the deficiency.**

Guthrie claimed that because he had a preferred marine mortgage, he was entitled to a "proper foreclosure" and BECU could not proceed on a deficiency judgment because BECU repossessed the boat rather than suing in federal court to foreclose. But Guthrie is wrong. A preferred marine mortgage under the federal Ship Mortgage Act establishes methods for a marine mortgage holder to protect and enforce their interests in a vessel. 46 U.S.C. § 31325. Specifically, marine mortgage holders may either bring an in rem or in personam action in federal court, or may:

> [E]nforce the preferred mortgage lien or a claim for the outstanding indebtedness secured by the mortgaged vessel, or both, by exercising any other remedy (including an extrajudicial remedy) against a documented vessel [].

46 U.S.C. § 31325(b)(3). This option allowed BECU to proceed in state court and use any remedy allowed by Washington law to repossess the boat and allows BECU to collect the deficiency now.

Guthrie's reliance on 46 U.S.C. § 911 *et seq* and *Nate Leasing Co. v. Wiggins*, 114 Wn. 2d 508, 509 (1990) in support of his position that BECU could only have foreclosed in federal court was mistaken. This is superseded law. 46 U.S.C. § 911 has been amended and recodified as 46 U.S.C. §31325 (b); *Nate Leasing* relied on the former statute. *See Nate Leasing* 114 Wn.2d at 509; 46 U.S.C. § 31325. 46 U.S.C. § 31325 added an option

BECU OBJECTION TO CONFIRMATION - 5    **NEWMAN DU WORS LLP**    1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

that allows BECU to proceed in State court "under any other remedy . . . allowed under applicable law." 46 U.S.C. § 31325(b)(3)(A).

### 2. Even if Guthrie could cite valid law, he released all interest in the marine mortgage.

Even if 46 U.S.C. § 911 had not been amended, Guthrie would still have no claim under the Ship Mortgage Act. The Ship Mortgage Act pertains only to ship mortgages, not any other form of indebtedness. 46 U.S.C. § 31325 (a). Guthrie released all interest in the vessel and BECU filed a satisfaction of mortgage in December, 2011. (November 25, 2014 Scully Decl. at Ex. B.)

### 3. BECU mitigated its damages.

Guthrie claimed that BECU failed to mitigate its damages because BECU sold the boat to a private party. Guthrie relied on RCW 62A.9A-607, which provides that BECU must proceed in a commercially reasonably manner. A "commercially reasonable manner" may include disposition "by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms." RCW 62A.9A-610.

BECU proceeded in a commercially reasonable manner, and both the sale price and the costs of sale are justified. BECU used the services of a third-party broker, who advertised the vessel to the public and forwarded all bids to BECU. (November 25, 2014 Scully Decl. at Ex. B.) BECU also used the services of a public auction, who offered the boat at wholesale to bidders in an advertised auction. (November 25, 2014 Scully Decl. at Ex. B.) When no auction purchaser offered $230,000 or more, BECU accepted the highest bid—$350,000—and sold the boat to a private party. (November 25, 2014 Scully Decl. at Ex. A.) The purchase price is commercially reasonable because it is the best price BECU could obtain for the vessel on the open market. (November 25, 2014 Scully Decl. at Ex. B.)

Guthrie may also challenge BECU's deductions from the sale price of the vessel for the costs of storage and sale. But RCW 62A.9A-607 expressly provides that BECU

BECU OBJECTION TO CONFIRMATION - 6    **NEWMAN DU WORS LLP**    1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

Case 14-16771-KAO    Doc 23    Filed 11/25/14    Ent. 11/25/14 16:36:35    Pg. 6 of 10

may deduct the costs of enforcement—including commercially reasonable costs of sale—and charge them against Guthrie. And the costs of sale are commercially reasonable because they were incurred in the ordinary course of a sale, and are consistent with market prices for similar services. (November 25, 2014 Scully Decl. at Ex. B.)

**4. BECU is not unjustly enriched.**

Guthrie argued to the State court that BECU would be unjustly enriched by collecting the deficiency balance. But unjust enrichment occurs when (1) BECU receives a benefit, (2) the received benefit is at Guthrie's expense, and (3) the circumstances make it unjust for BECU to retain the benefit without payment. *W.H. Hughes, Jr., Co. v. Day*, 162 Wn. App. 1069 (2011). Guthrie borrowed money and hasn't paid it back. BECU has not received a benefit: it is suffering from a detriment.

**5. BECU did not accept the vessel as an accord and satisfaction.**

Guthrie claimed that BECU accepted the vessel as an accord and satisfaction, citing RCW 62A.9A-622. But RCW 62A.9A-622 does not address accord and satisfaction. RCW 62A.9A-622 provides:

> (a) **Effect of acceptance.** A secured party's acceptance of collateral in full or partial satisfaction of the obligation it secures:
>
> (1) Discharges the obligation to the extent consented to by the debtor

RCW 62A.9A-622. Guthrie claimed—without citing any facts or authority—that this means when he voluntarily gave the boat back to BECU all debts were automatically satisfied. But RCW 62A.9A-622 doesn't say that. Instead, it provides that BECU may accept collateral in *full or partial satisfaction* of the obligation. RCW 62A.9A-622(a). Likewise, to create an accord and satisfaction in law, there must be a meeting of minds of the parties upon the subject and an intention on the part of both to make such an agreement. *Kibler v. Frank L. Garrett & Sons, Inc.*, 73 Wn. 2d 523, 525 (1968).

BECU accepted the boat in partial satisfaction of the obligation, and credited the fair market value of the boat to Guthrie's indebtedness. (November 25, 2014 Scully Decl.

BECU OBJECTION TO CONFIRMATION - 7    **NEWMAN DU WORS LLP**    1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

Case 14-16771-KAO   Doc 23   Filed 11/25/14   Ent. 11/25/14 16:36:35   Pg. 7 of 10

at Ex. B.) There is no evidence suggesting that the parties intended to modify the Promissory Note or the balance due. The Promissory Note mandates that Guthrie repay the entire principal balance "notwithstanding any release of security." (November 25, 2014 Scully Decl. at Ex. A.) The transfer of ownership Guthrie signed when he voluntarily turned the boat over to BECU indicated that BECU provided no consideration for the transfer. (November 25, 2014 Scully Decl. at Ex. B.) Had BECU credited the entire balance due against the boat, BECU would have so indicated on the transfer of ownership form as consideration to Guthrie. (*Id*.) Further, Guthrie received a notice from BECU after the sale unequivocally stating that:

> This is to inform you that your vehicle has been sold. Below are the details regarding the sale. You are responsible for any deficiency balance of the loan referenced above.

(November 25, 2014 Scully Decl. at Ex. B.)

### 6. BECU accurately accounted for the funds and did not waive BECU's claim for a judgment on the outstanding balance of the promissory note.

BECU accurately and completely accounted for each payment Guthrie made and for the fair-market sale of the boat once Guthrie voluntarily turned it over. (November 25, 2014 Scully Decl. at Ex. B.) BECU's affidavits supporting the total due are supported by BECU's records reflecting each payment made by Guthrie and the proceeds of the sale of the vessel. (November 25, 2014 Scully Decl. at Ex. B.)

## IV. REQUEST

BECU accordingly requests that the Court enter an order denying confirmation of the debtor's plan, and require that a feasible amended plan be filed no later than 14 days from the date of entry of the order.

DATED November 25, 2014.

**NEWMAN DU WORS LLP**

By: /s/ Keith Scully
Keith Scully, WSBA No. 28677
John Du Wors, WSBA No. 33987

BECU OBJECTION TO CONFIRMATION - 8   **NEWMAN DU WORS LLP**   1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

Case 14-16771-KAO    Doc 23    Filed 11/25/14    Ent. 11/25/14 16:36:35    Pg. 8 of 10

| | |
|---|---|
| 1 | 1201 Third Avenue, Suite 1600 |
| 2 | Seattle, Washington 98101 |
| 3 | Attorneys for Creditor Boeing Employees |
| 4 | Credit Union |

BECU OBJECTION TO CONFIRMATION - 9    **NEWMAN DU WORS LLP**    1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

# CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2014, I caused to be served a true and correct copy of the foregoing document on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing.

Additionally, a copy of the foregoing was served on the following parties as indicated below:

BECU OBJECTION TO CONFIRMATION - 10    **NEWMAN DU WORS LLP**    1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

Case 14-16771-KAO    Doc 23    Filed 11/25/14    Ent. 11/25/14 16:36:35    Pg. 10 of 10